## Chicago & Alton Railroad Company v. Hattie Logue, Administratrix of Walter Logue, Deceased.

1. PARTIES—*Death from Negligent Act.*—In an action by the next of kin against a railroad company for negligently killing a human being, a brother or sister of the deceased, born shortly after such killing, is an heir and a necessary party to the suit.

2. AMENDMENTS—*Of Pleading—Discretion of the Court.*—To allow an amendment of the declaration without terms, by making an additional party plaintiff in an action for damages resulting from a death caused by negligence, after a judgment has been reversed by the Appellate Court and the cause has been remanded for want of such party, is not an abuse of judicial discretion.

3. SAME—*Without Terms—When Proper.*—In the trial of an action for negligence resulting in the death of a child, it is proper to permit, without imposing terms, the declaration to be amended, so as to show that the child, when killed, was sitting instead of standing on the track, and was upon, rather than crossing, the track.

4. SAME—*Request for Imposition of Terms.*—When the record does not show that the defendant asked the court to impose terms upon the plaintiff for leave to amend the declaration, or that he did not allege the failure of the court to impose terms as one of the grounds for a new trial, the question can not be raised in the Appellate Court.

5. SAME—*Imposition of Terms—Exceptions.*—If it is proper that terms be imposed upon a party for leave to amend, the adverse party should ask that it be done, and may preserve an exception to the action of the court in refusing to do so.

6. PARTIES AS WITNESSES—*Change of Pending Suit to Render Them Competent.*—In an action to recover damages for the killing of a child, the father resigned as administrator and the mother was appointed as such during the trial, and was, thereupon, substituted as plaintiff in the place of the father. As there was nothing to show that the appointment of the mother was irregular, *it was held* to be no objection that such change was made to render both father and mother competent witnesses in the case.

7. TRIALS—*Improper Remarks of the Court.*—If a party aggrieved by remarks of the judge during the trial, does not except at the time, he can not assign the same for error in the Appellate Court.

8. EVIDENCE—*Rules of Defendant Corporations.*—In an action against a corporation for negligence resulting in death, the rules of the defendant may be competent, as tending, with other evidence in the case, to show negligence. .

9. SAME—*Objections to—General and Special.*—If a party desires to object to the manner in which evidence is presented to the jury, the objection must be specific. A general objection is not sufficient.

C. & A. R. R. Co. v. Logue.

10. NEGLIGENCE—*A Finding of, Sustained—Statement of Facts.*—Where an engineer sees an object on the track and can not determine absolutely whether it is a child or some inanimate thing, and sees a woman's frantic demonstrations as she runs toward the object with a manifest desire to stop the train, and knows that if he waits to ascertain certainly what the object is it will be too late for him to save the child, if it be a child, and he waits until he knows what the object is before reversing his engine and applying the brakes, a jury will be warranted in finding such a course to be an undervaluation and a reckless disregard of life.

11. SAME—*Parents' Care for Children.*—The wife of a station house keeper, who, with his family, lived in the station house, left a child twenty-one months old sitting in one of the rooms, absenting herself for a few minutes to attend to the wants of another child lying sick in an adjoining room. In her absence the child went upon the track where it was killed by a passing train. *Held,* that the parents of the child were not guilty of such negligence as to bar a recovery.

12. SPECIAL FINDINGS—*When in Aid of the General Verdict.*—Where the jury answered certain special interrogatories submitted to them at the request of the defendant, to the effect that the engineer did not endeavor to ascertain what an object on the track was as soon as he could and that after ascertaining what it was he stopped his train as soon as he could, *it was held* that the finding aided the general verdict by showing that the jury found for the plaintiff on the ground, that under the circumstances it was negligence to wait until he knew absolutely that the object was a child before endeavoring to stop the train.

13. DAMAGES—*When Not Excessive.*—A verdict for $1,500 for negligently running over and killing a child twenty-one months old is not excessive.

Trespass on the Case for damages. Death from negligent act. In the Circuit Court of Madison County; the Hon. GEORGE W. WALL, Judge, presiding; declaration in case; plea of not guilty; trial by jury; verdict and judgment for plaintiff; appeal by defendant. Submitted at the August term, 1894, and affirmed. Opinion filed March 23, 1895.

APPELLANT'S BRIEF, WISE & McNULTY, ATTORNEYS.

In this class of cases the negligence of the parents is imputed to the child. Their negligence in permitting the child to get beyond their control and go upon the railroad track where it was killed is such as prevents a recovery in this suit. Thompson on Neg. 1191; Beach on Contributory Neg., Sec. 44; City of Chicago v. Major, Admr., 18 Ill. 349; City of Chicago v. Starr, Admr., 42 Ill. 174; Chicago & A. R. R. Co. v. Becker, 84 Ill. 483; Toledo W. & W. Ry. Co. v.

Miller, Admr., 76 Ill. 278; Toledo W. & W. Ry. Co. v. Grable, Admr., 88 Ill. 441; Chicago City Ry. Co. v. Wilcox, 138 Ill. 379.

APPELLEE'S BRIEF, TRAVOUS & WARNOCK, ATTORNEYS.

The imposition of terms on allowing amendments rests within the sound discretion of the court; and its refusal to impose terms, such as payments of costs, can not be assigned as error, especially where the amendments relate to formal matters. Heslep v. Peters, 3 Scam. 45; Schofield v. Settley, 31 Ill. 515; Schirmeier v. Baecker, 20 Ill. App. 373; Tomlinson v. Earnshaw, 112 Ill. 311.

The objection to the reading of rule 47 from a book for the reason that the book itself is the best evidence can not avail the defendant in this court, as the objection made below was general. The rule was proper evidence. Howell et al., Executors, v. Edmonds, 47 Ill. 79; Clevenger v. Dunaway, 84 Ill. 367; Mackin v. O'Brien, 33 Ill. App. 474; L. S. & M. S. Ry. Co. v. Ward, 135 Ill. 518.

The circumstances of this case show no negligence on the part of the child's parents. C. & A. R. R. Co. v. Gregory, 58 Ill. 226; City of Chicago v. Hessing, Admr., 83 Ill. 204; Gavin v. City of Chicago, 97 Ill. 66; Stafford et al. v. Rubens, 115 Ill. 196; E., J. & E. Ry. Co. v. Raymond, 148 Ill. 241.

Whether the parents were guilty of contributory negligence was a question of fact, to be determined by the jury from the evidence and circumstances of the case. City of Chicago v. Major, 18 Ill. 361; C. & A. R. R. Co. v. Adler, 129 Ill. 335; C. & A. R. R. Co. v. Lane, 130 Ill. 116; L. S. & M. S. Ry. Co. v. Parker, 131 Ill. 557.

The death of the child was caused proximately by the omission of appellant's servants to use ordinary care to avoid the danger, after they became aware, or by the exercise of reasonable care might have become aware of it. It is immaterial whether the parents were negligent in permitting the child to be upon the track or not. Chicago West. Division Ry. Co. v. Ryan, 131 Ill. 477; Werner v. Railway

Co., 81 Mo. 374; Meeks v. Southern Pacific R. R. Co., 56 Cal. 513; Pullman Palace Car Co. v. Laack, 143 Ill. 242.

It can not be said the damages are excessive. The compensation to be awarded not being capable of exact measurement, it is for the jury to determine the proper amount in view of all the circumstances. C. & A. R. R. Co. v. Becker, 84 Ill. 483; City of Chicago v. Keef, 114 Ill. 222.

MR. PRESIDING JUSTICE SCOFIELD DELIVERED THE OPINION OF THE COURT.

About six weeks after Walter Logue had been killed by appellant's train, Walter's mother gave birth to a son, named Willie. This child was not mentioned in the declaration as one of Walter's heirs, and for the variance in this respect between the evidence and the declaration, and for other errors mentioned in the opinion, the first judgment in favor of appellee was reversed by this court. 47 Ill. App. 292.

When the cause had been re-docketed in the Circuit Court, appellee, by leave of court granted without terms, amended the declaration so as to show the fact of Willie's birth. It is insisted that the court should have allowed the amendment only upon terms. We think that the court did not abuse its discretion in permitting the amendment to be made without terms.

It was also eminently proper for the court to permit the declaration to be amended on the trial, without terms, so as to show that the child, when killed, was *sitting* and not *standing* on the track, and was *upon* rather than *crossing* the track. These amendments could not in any manner have affected the defense of the case on the merits.

It is insisted, however, that the substitution of the boy's mother as plaintiff in place of the boy's father should not have been permitted without imposing terms. But it appears from the record, that when leave to make this amendment was obtained, appellant did not ask that terms should be imposed. Neither was anything said, specifically, about the allowance of this amendment without terms in any of

the thirteen reasons set forth in the written motion for a new trial. And so the question is raised for the first time by the assignment of errors in this court. The objection comes too late. It was proper for the court to permit the amendment to be made, and if terms should have been imposed appellant should have asked that this be done, or should have preserved an exception to the action of the court in some other sufficient manner. Tomlinson et al. v. Earnshaw et al., 112 Ill. 311.

But it is said that the father resigned as administrator, and the mother was appointed as such during the trial; that thereupon the substitution of the mother as plaintiff in place of the father was made; that this was done in order that both father and mother might be competent witnesses in the case; and that for this reason the amendment should not have been allowed.

There is nothing in the record to show that the appointment of the mother as administratrix was irregular or void. Appellant's counsel asked for time to inspect the records and files of the County Court relative to the appointment of the mother as administratrix, but the court advised them to go on with the trial, "to which remark of the court counsel for defendant made no response." If counsel desired to allege this as error, they should have made a response in the way of an exception.

It is also alleged that the court erred in admitting in evidence the 47th of appellant's rules, which is as follows:

"Engineers must be particular to sound the whistle at all whistling posts and railroad crossings, and strictly regard slow boards. The engine bell must be rung at all highway crossings, commencing at least eighty rods from the crossing, and the bell kept ringing until the engine shall have passed the highway. At obscure crossings two long and a succession of short blasts of the whistle must be sounded until after the engine shall have reached the road. All fines imposed upon the company in consequence of a disregard of this rule will be collected from the engineer in fault."

That this rule was competent evidence seems unquestionable under the authority of L. S. & M. S. Ry. Co. v. Ward,

135 Ill. 511, in which case it was said: "The rule was admitted in evidence, not for the purpose of founding a substantive cause of action upon its breach, but as tending, with the other evidence in the case, to show negligence in driving and managing said engine." The first count of the declaration in the case at bar avers negligence in managing the engine and train, while the second count avers the failure to ring the bell or sound the whistle. As bearing upon the question of negligence in the management of the engine, the evidence was properly admitted.

But it is said that the court erred in permitting the witness to read the rule to the jury; in other words, that if the rule was competent at all, the printed rule itself, as being the best evidence, should have been introduced in evidence. No specific objection was made on the ground that the reading of the rule was not the best evidence. A general objection is not sufficient to enable appellant to raise this point in this court.

More important questions than these, however, remain for consideration. Was the negligence of the parents such as to preclude a recovery by reason of imputed negligence? Were the servants of appellant guilty of negligence in the management of the train? Did the court err in giving and refusing instructions? Are the damages excessive? A brief statement of the evidence is necessary in order to the proper answering of these questions.

Walter's father, Alexander Logue, had been station agent at Edwardsville crossing for about three years, during which time he had resided with his family in the depot building. Appellant's road ran north and south on the west side of the depot, while the road popularly called the Big Four, ran on the east side thereof, the two tracks being perhaps fifty feet apart. The depot building contained four rooms. The north room was used for the office of the roads; the room south of it as a sitting room for Mr. Logue's family; the third room, which was south of and two steps lower than the sitting room, as a bed room; and the fourth room, which was two steps lower than the bed room, as a kitchen. Passing from the kitchen through a door on the west, one came to

a small yard, from which he might reach the platform by ascending three steps, the platform being about four feet higher than the yard. There was a door between the office and the sitting room, which was generally kept closed and which could not be opened by the boy, Walter, who was only twenty-one months old.

Alexander Logue generally remained on duty from seven in the morning till seven in the evening, when he was relieved by the night operator. Having a death message to deliver, he got the night operator to take his place earlier than usual and went to the stable, which was west of appellant's track, to hitch up his horse, leaving Walter in the kitchen with his mother. Another boy, Russell, was very sick with scarlet fever, and the mother went to the bed in the bed-room, where the child was lying, to render him some attention. She gave the sick boy a drink of water and turned his pillow. She was in the bed-room from one and a half to two minutes. She had left Walter sitting on the lower of the steps which led from the kitchen to the bed-room. Returning to the kitchen she found Walter gone and hurried into the yard and thence upon the platform in search of him. She saw the child sitting on the track with his back to the north, about seventy-five or one hundred feet north of her and the train coming from the north at the rate of forty-five or fifty miles an hour. The train did not stop at this station unless signaled to do so. The signal was generally given by the dropping of a green ball and the ball had not been lowered. The track was level for two miles north of the station and there was nothing to obstruct the view. There was a conflict of the evidence as to the position of the child with reference to the public highway, which crossed the track just north of the platform, and also as to whether or not the bell was rung or whistle sounded, in conformity with the requirements of the law. The jury might well have answered both of these questions in favor of appellee.

The mother called her husband and ran toward her child, screaming and waving her hands, and then sprang across

the track in front of the engine, seizing the child by the dress and thinking she had saved it. She had failed, however. The child was killed and she was knocked down and injured.

The engineer saw the mother's demonstrations and saw the object on the track, but did not seek to get his train under control till he saw the object move and was thereby satisfied that it was alive. He practically admits, and the jury were justified in finding, that if he had reversed the engine and applied the emergency brake when he first saw the object and the mother's demonstrations, the mother could have saved the child. The position taken by the engineer, and others called as experts, is set forth in the proposition that if an engineer sees an object on the track and can not determine absolutely whether it is a child or some inanimate thing, and sees a woman's frantic demonstrations as she runs toward the object with a manifest desire to stop the train, and knows that if he waits to ascertain certainly what the object is it will be too late for him to save the child, if it be a child, then it is the right or duty of the engineer to wait until he knows what the object is, before reversing the engine and applying the brakes. Under the facts disclosed by the record in this case, a jury would be warranted in finding such a course to be an undervaluation and a reckless disregard of life, even though many experts should express an opinion to the contrary.

On the question of the negligence of the parents, we are of the opinion that no such negligence is shown as to bar a recovery. On the question of appellant's negligence, we are of the opinion that such a degree of negligence is shown as to authorize a recovery.

The first and second of appellant's refused instructions state in substance, that if the engineer could not distinguish the object to be a child until so near that the child was killed before the train could be stopped, then there could be no recovery. This proposition is contrary to our views of the law as hereinbefore announced. The third of appellant's refused instructions told the jury that the negligence of the

child's parents was such as to preclude a recovery. This instruction invaded the province of the jury and was therefore properly refused. It is admitted that the fourth refused instruction was not proper after the declaration had been amended.

We find no error in the modification of appellant's instructions or in the giving of appellee's instructions.

The jury answered certain special interrogatories submitted to them at the request of appellant, to the effect that the engineer did not endeavor to ascertain what the object on the track was as soon as he could; that after ascertaining that the object was a child, he stopped the train as soon as he could, but after first seeing the object he did not endeavor to get his train under control, and that, while the engineer could not have stopped the train in time to save the child's life after discovering that the object was a child, yet if he had endeavored to control his train as soon as he saw the object, the mother could have saved the child.

It does not follow that, because of these special findings, the court should have disregarded the verdict and rendered judgment for appellant, or that the verdict should have been set aside because of its inconsistency with the special findings. These findings aid the verdict by showing that the jury found for appellee on the ground that, under the circumstances of this case, it was negligence for the engineer to wait until he absolutely knew the object to be a child, before seeking to get his train under control.

It is said that the verdict of $1,500 in this case is excessive. It is not claimed that the court erred in stating to the jury the measure of damages; but it is said that the sum of $1,500 is too much for the killing of a child of this age under any circumstances. Appellant cites two cases, in each of which the amount recovered for killing an infant was $800, and the verdict was not disturbed (City of Chicago v. Major, 18 Ill. 349; City of Chicago v. Hesing, 83 Ill. 204); also another case in which the recovery of $1,000, for killing a child twelve years of age, was sustained (City of Chicago v. Powers, 42 Ill. 169); also another case, in which a

judgment of $1,000 for killing a child nine years of age was not considered excessive (I. C. R. R. Co. v. Slater, 129 Ill. 91); also another case in which the recovery of $2,000, for killing a child seven years of age, was sustained (C. & A. R. R. Co. v. Becker, 84 Ill. 483). But these authorities, instead of showing that the verdict in the case at bar is excessive, are excellent authorities in support of the contrary proposition.

No substantial error appears in this record, and the judgment is therefore affirmed.